JOHN H. WEBSTER, TRUSTEE, V. BATES MACHINE COMPANY.

FILED MARCH 19, 1902. No. 11,318.

Commissioner's opinion, Department No. 3.

1. **Lease: REENTRY BY LANDLORD: DEFAULT IN PAYMENT OF RENT: FORFEIT OF MACHINERY: RIGHTS OF LANDLORD.** When, pursuant to the terms of lease, a landlord reenters because of a default in the payment of rent under a lease covenanting that in such case machinery placed upon the premises by the tenant shall be forfeited to the lessor, the former will succeed to only such title in such personal effects as the latter himself had.

2. **Conversion: TORTIOUS OR OTHERWISE: NOTICE.** When in the absence of any relation of trust or confidence, personal property is taken possession of, tortiously or otherwise, the act alone is notice to the whole world of the nature and extent of the right, title or claim made by the party committing it; and if a person having an adverse claim thereto, fails to assert it or remains in ignorance until after the lapse of the statutory period of limitations, the fault is his own and his right of action therefor is barred. There is no distinction in this respect between actions for the recovery of chattels and those for the recovery of real property.

ERROR from the district court for Buffalo county. Tried below before SULLIVAN, J. *Reversed.*

---

*With the coming of the wife into the hand of the man.

*Dryden & Main* and *James H. McIntosh,* for plaintiff in error.

*William Gaslin, contra.*

AMES, C.

This is an action in replevin which (a jury being waived) was tried upon a stipulation of facts. From this stipulation it appears that John H. Webster, the plaintiff in error, was the owner of the fee, in trust, of a certain manufacturing building and property situate in the city of Kearney in this state. In September, 1892, he executed a lease of the premises to one Barnheisel for a term of years, reserving rent, payable semi-annually. It was covenanted in the lease that the tenant should make certain repairs and improvements, and that, if he should pay his rent promptly when due, he should, at the expiration of his term, have the right to remove from the premises "the buildings which shall have been erected thereon by said second party, during the continuance of this lease, for an engine room and boiler house; also any new boilers and engines placed therein by second party." It was further covenanted "that the second party will put a new floor in the machine room and a new roof on the same; erect new line shaft with proper pulleys; make all necessary additions, repairs to said mill and machinery, all of which additions, repairs and improvements, (except said new boilers and engines, with engine and boiler building) shall be and remain the property of said first party"; but, if the tenant should make default in the payment of rent, the lessor should be entitled to reenter, and in such case all improvements made on said premises should be forfeited to him. The tenant made default of the first instalment of rent reserved by the lease, and the lessor on or about the 20th day of July, 1893, reentered upon the premises and took possession of all the improvements and machinery placed thereon by the tenant, including the engine which is the

subject of this action, claiming title thereto under the
above-mentioned covenants of the lease. Before the lease
was made of record and before forfeiture thereunder had
been incurred, the defendant in error, the Bates Machine
Company, without any actual knowledge of the existence
of the lease, sold and delivered to the tenant the engine
which is the subject of this controversy, upon a written
contract that the title to the same should not pass until
full payment therefor, and caused the contract to be made
duly of record in the office of the clerk of the county. Pay-
ment was never made. Upon this state of facts the logical
conclusion seems to us irresistible that, as between the
vendor of the engine and the lessor of the factory, the
former has the better right. The latter is not a purchaser
or mortgagee for value, nor is he an attachment or execu-
tion creditor. Under the covenants of his lease he was,
upon default in payment of rent, to appropriate whatever
machinery or appliance belonging to his tenant were to be
found upon the premises, but he was not entitled to seize
property found thereon, the title to which was in third
persons,—especially so if such third persons, at the time
they delivered the property upon the grounds, were igno-
rant of the covenants of the lease or even of the existence
of that instrument. The tenant, at the time of the sale
and delivery of the engine, was in possession of the factory,
with all the external *indicia* of ownership. From all that
appears from the stipulation of facts, the vendors had a
right to regard him, and did regard him, as the sole owner
of the premises. As between the parties to this action the
rights of the lessor, at the time he took possession of the
buildings and machinery, did not rise higher than those
of his tenant; and, as between the tenant and the defend-
ant in error, the title to the machine was unquestionably
in the latter.

But the plaintiff in error pleaded the statute of limita-
tions, and upon this plea we think must prevail. It is
stipulated that on the 20th day of July, 1893, the lessor
"took possession of the said premises in which was the

property involved in this suit and placed a watchman in charge of the same who has been at all times since that date, until the commencement of this suit, in possession of said premises in which the property in question is now and has been situated since said Barnheisel [the tenant] put the same therein in 1892, nor did the said Bates Machine Company demand said property from the defendant herein, until shortly before the commencement of this suit." But it is further stipulated "that when defendant's agent in July, 1893, took possession of said paper mill, in which said property in controversy was left by Barnheisel, he claimed to take posession of said property in controversy herein, and said McIntosh, agent of said defendant Webster, instructed the watchman left in charge of said paper mill to hold all property therein for said Webster, but of this neither plaintiff nor its attorneys or agent nor any one acting therefor had any notice or knowledge whatever." And again, "No notice of the defendant's claim to the property in question was ever given to said Bates Machine Co. or to their attorney, or any of their agents or representatives until the latter part of 1897, shortly after the termination of the case of Henry E. Lewis, Receiver, v. the said Bates Machine Co., hereinbefore referred to." In the interim the suit last mentioned and another action between the defendants in error and another person were prosecuted to determine the title and right of possession of the property. To neither of these actions was the plaintiff in error a party, nor is he, or his agent, McIntosh, shown to have had any knowledge of them, although in both of them attorneys representing him in this suit were counsel adverse to the machine company, and in both cases the property was, by stipulation between the parties thereto, permitted to remain undisturbed in the paper mill during the pendency of the litigation, which terminated in both instances in favor of the machine company. This action was begun on March 16, 1898. From these circumstances and others detailed in the stipulation, the trial court found that the possession of the plaintiff in error was not adverse

to the machine company, until demand and refusal, shortly before the beginning of this action.

The facts being admitted, the question of adverse possession is one of law, and the rule that an issue of fact determined by a trial court from conflicting evidence will not be disturbed is not applicable. When the plaintiff in error took possession of the premises his lease was, and for some time had been, of record in the county. He took open, notorious and exclusive possession under this instrument, which, in terms, entitled him to keep and retain all the fixtures put in the mill by his tenant, including the engines in controversy; and he put an agent in charge, with instructions to hold them for him, which he continued to do for more than four years before this action was begun. There could be no stronger evidence of his intent to hold them adversely to the whole world and to convert them to his own use under a claim of title. This is an action in replevin and there is no allegation or proof of any concealment or fraud, but, if there had been both, they would not have prevented or delayed the running of the statute. If the plaintiff in error was guilty of any wrong it was in the conversion of the property, and the rule is that in such cases the cause of action arises at the date of the conversion, even although it be fraudulent or felonious. Thus it was held in *Howk v. Minnick,* 19 Ohio St., 462, that an action for the wrongful taking of personal property was barred in four years, although the taking was under circumstances constituting larceny, and was concealed from the owner. In *Fee's Adm'r v. Fee,* 10 Ohio, 469, which was an action for money had and received, the court say: "From the statement of the case it is evident that the cause of action accrued on the receipt of the money. In such a case it is not sufficient, in order to avoid the effect of the statute, to aver that the party was ignorant of the fact that he had a cause of action. The plea of the statute goes to the existence of the cause of action, and not to the knowledge of it. This, although it is a sort of elementary principle, and has its foundation in necessity and conven-

ience, has been sometimes questioned, but I am not aware that it has ever been shaken. The case of *Granger v. George,* 5 B. & C. [Eng.], 149, is one of the last in which the point has been made. It was an action of trover. The conversion had taken place more than six years before the commencement of the suit. The plaintiff attempted to avoid the bar of the statute by replying that the fact of the conversion did not come to his knowledge till within six years. But it was held notwithstanding that the statute was a bar, and that the circumstances which were set out in the plea were entirely foreign to the issue." To the same effect is *Campbell v. Roe,* 32 Nebr., 345, the syllabus in which is: "When an agent is appointed to collect money and remit to the principal after deducting his charges, no time being stated when the remittance is to be made, the statute of limitation commences to run in favor of the agent from the time he receives the money." "Mere silence or concealment by the defendant, without affirmative mis-representation, will not toll the statute."

The underlying reason in this class of cases is that when, in the absence of any relation of trust or confidence, personal property is taken possession of, tortiously or otherwise, that act alone is notice to the whole world of the nature and extent of the right, title or claim made by the party committing it; and, if a person having an adverse claim fails to assert it or remains in ignorance until after the lapse of the statutory period of limitations, the fault is his own, and his right of action therefor is barred. To this effect are *Wood v. Carpenter,* 101 U. S., 135; *Parker v. Kuhn,* 21 Nebr., 413-422; *Conner v. Goodman,* 104 Ill., 365. There is no distinction in this respect between actions for the recovery of chattels and those for the recovery of real property. In either case ignorance of the plaintiff's rights or of the nature of the defendant's claim, does not delay, suspend or prolong the running of the statute.

It is recommended that the judgment of the district court be reversed and a new trial granted.

DUFFIE and ALBERT, CC., concur.

. By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED AND REMANDED.